**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

**RANDOLPH SIMMONS**, on behalf of himself
and all others similarly situated,

               Plaintiff,

  -against-

**ABACO POLARIZED, d/b/a OKANA, LLC,**

               Defendant.

------------------------------------------------------------

Case No.



**CLASS ACTION COMPLAINT
& DEMAND FOR JURY TRIAL**

Plaintiff, **RANDOLPH SIMMONS** ("Plaintiff" or "Mr. Simmons"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert L. Schonfeld, Esq., (of counsel to Joseph & Norinsberg, LLC) as and for their putative class action complaint against Defendant, **ABACO POLARIZED, d/b/a OKANA, LLC** ("Abaco Polarized" or "Defendant") hereby alleges as follows:

**<u>INTRODUCTION</u>**

1. Plaintiff, Randolph Simmons, is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL"). He has been diagnosed with **retinitis pigmentosa**, a progressive retinal disorder that causes severe peripheral field loss and central acuity degradation. As documented in Exhibit A,  Mr. Simmons relies exclusively on screen-reading software, magnification tools, and keyboard-based navigation to access digital content. He has completed formal orientation and mobility training through Lighthouse Guild and Visions at Selis Manor, on 23rd Street, New York, and other related programs. Plaintiff remains highly motivated to maintain independence through assistive technology.

2.      Defendant, **Abaco Polarized, d/b/a Okana, LLC**, operates consumer-facing retail businesses through interactive e-commerce websites, including www.abacopolarized.com and www.okanaeyewear.com (collectively, the "Website" or "Defendant's Website"). Defendant offers a range of polarized sunglasses and related eyewear, with online product listings, specifications, and purchasing features, and promotes its sunglasses as high-quality, polarized eyewear backed by a lifetime warranty.

3.      Plaintiff visited Defendant's Website to browse and purchase polarized sunglasses, including specific models such as the Kai Polarized Sunglasses, Avery Polarized Sunglasses, and Breaker Sport Polarized Sunglasses (the "Subject Products"). Plaintiff sought to use the Website's product listings, shopping cart, and checkout features to independently complete purchases. However, persistent accessibility barriers—including missing alternative text, empty links, unlabeled buttons and form controls, and structural issues documented by WAVE evaluations—prevented him from navigating or transacting on the Website without assistance. Plaintiff remains eager to return once the Website is remediated, as Abaco's offerings and lifetime warranty are uniquely suited to his needs as a legally blind consumer.

4.      Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Websites to be fully accessible to and independently usable by blind and visually-impaired individuals. Defendant's denial of full and equal access to its Website, and therefore its denial of the goods and services offered thereby—including online retail transactions—constitutes unlawful discrimination under the Americans with Disabilities Act ("ADA").

5.      Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including approximately 2.0 million who are blind. According to reports published by advocacy organizations for the blind, hundreds of thousands of visually-impaired persons reside in New York State.

6.     Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually-impaired persons.  Similarly, both New York State and New York City law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7.     Defendant's Websites are not equally accessible to blind and visually-impaired consumers, in violation of the ADA and analogous state and city laws.  Plaintiff seeks a permanent injunction requiring Defendant to adopt, implement, and maintain accessible web design practices consistent with WCAG 2.1 AA.  Such relief should include appointment of a qualified accessibility coordinator, periodic audits and user testing with blind users, remediation of code issues (e.g., alternative text, ARIA associations, heading hierarchy, focus order, and color contrast), ensuring accessibility of third-party integrations, publication of an accessibility statement and feedback channel, training of relevant personnel, and ongoing monitoring.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182 et seq.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because Defendant conducts a substantial amount of business in this District through its interactive e-commerce Website, and a substantial portion of the conduct complained of herein occurred in this District, as Plaintiff attempted on multiple occasions to access the Website from his home within the Southern District of New York.

11.     Defendant is subject to personal jurisdiction in this District because it purposefully targets and solicits business from New York State residents through its highly interactive Website, which offers shipping and services to New York customers and generates substantial revenue from online sales into this District.

12.     Defendant has committed, and continues to commit, the acts and omissions alleged herein within the Southern District of New York.  In so doing, Defendant has violated the rights guaranteed to Plaintiff and other blind and visually-impaired consumers under the ADA and related state and city laws, causing them injury.

13.     Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website from within this District.  The access barriers encountered by Plaintiff have repeatedly denied him full and equal access and continue to deter him from accessing Defendant's Website in the future.

14.     The United States Department of Justice has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those provided through websites.  Plaintiff is a member of the protected class of individuals under the ADA and the regulations implementing the ADA.

15.     Courts routinely support venue placement in the district where the plaintiff attempted and failed to access the public accommodation. See, *Chloe NA v. Queen Bee of Beverly Hills, LLC.*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC.*, 286 F. Supp. 3d 365

(E.D.N.Y. 2017); see also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021). In *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017), Judge Patti B. Saris held that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim." Id. at 294. This satisfies Due Process because the harm—the barred access—occurred within the forum. Id. at 293. Here, Plaintiff's attempts to access the website from New York County, firmly establishes venue in this District.

## **PARTIES**

15.    Plaintiff, Randolph Simmons is a legally blind individual residing within the Southern District of New York.  He has been formally certified as legally blind by the New York State Commission for the Blind due to retinitis pigmentosa, and relies on screen-reading software, including NVDA for Windows, to access websites.  Plaintiff attempted to use Defendant's Website on multiple occasions to purchase specific polarized sunglasses necessary for his safe and independent navigation outdoors.

16.    Defendant, Abaco Polarized, d/b/a Okana, LLC, is a privately held company organized under the laws of the State of Florida, with its principal executive offices located at a business address in Florida.  Defendant markets and sells polarized sunglasses and related eyewear products to consumers nationwide, including residents of New York City and this District, through its interactive Website at www.abacopolarized.com and www.okanaeyewear.com.

17.    Abaco Polarized has been in the sunglasses business for many years and promotes Okana Eyewear as a best-in-class polarized sunglasses brand.  Defendant's Website functions as a primary channel for consumer engagement and sales, offering product listings, specifications, lifetime warranty information, and online purchasing features.

18.    Defendant has invested substantial sums in developing and maintaining its Website and derives significant online revenue.  Despite its resources, Defendant has failed to design, construct, maintain, and operate its Website in a manner that is accessible to blind and visually-impaired consumers, including Plaintiff.

**NATURE OF ACTION**

19.    The Internet has become a significant source of information and a tool for conducting business and everyday activities such as shopping, learning, banking, and researching for sighted, blind, and visually-impaired persons alike.

20.    Blind and visually-impaired people access websites using keyboards in conjunction with screen-access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display ("screen-reading software").  Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

21.    Screen readers rely on properly coded text, labels, headings, and alternative text for images.  If website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

22.    Screen readers use information gathered from the operating system, the browser, and the website's code, and apply rules to interpret what appears on the screen.  They use text-to-speech, Braille, and other output mechanisms to present content.

23.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.1, which are well-established guidelines for making websites accessible to blind and visually-impaired people.  These guidelines are widely followed by business entities and government agencies.

24. Non-compliant websites pose common access barriers to blind and visually-impaired persons, including, but not limited to: lack of text equivalents for non-text elements; missing alt text; unlabeled form fields; improper heading structure; inaccessible PDFs; and user interface components whose name and role cannot be programmatically determined.

25. Websites change frequently, and a one-time fix will not cause a digital platform to remain accessible without corresponding changes in corporate policies and periodic reviews using automated tools and end-user testing.

26. Plaintiff is legally blind as defined by federal and New York law, with central visual acuity of 20/200 or less in the better eye with best correction, and/or a visual field limitation less than 20 degrees.

27. Plaintiff uses screen-reading software (NVDA for Windows) and keyboard navigation to access the Internet, including e-commerce websites. Without proper coding, Plaintiff cannot perceive images, buttons, form fields, or messages that are visible to sighted users.

## STANDING

28. Plaintiff resides within the Southern District of New York and regularly relies on e-commerce to independently obtain goods delivered to his home. Because of his visual disability and heightened sensitivity to bright light and glare, properly fitted polarized sunglasses are essential to his ability to move outdoors, keep medical and personal appointments on his digital calendar, and maintain independence. Without suitable polarized sunglasses, Plaintiff is forced to cancel or reschedule outings, avoid traveling during certain daylight hours, and depend on others to assist him outside the home.

29. Defendant's Website is a primary channel through which Abaco Polarized and Okana market and sell polarized sunglasses and communicate their lifetime warranty and product specifications. Plaintiff became aware of the Website because of its focus on polarized

sunglasses and lifetime warranty, which promised durable eye protection particularly important to a legally blind individual on a fixed income.

30.    Plaintiff visited Defendant's Website on at least three specific occasions from his home in this District using NVDA, with the purpose of purchasing particular polarized sunglasses.  On or about January 18, 2026, Plaintiff navigated to the product page for the "Kai Polarized Sunglasses" to purchase a pair suitable for daily winter wear to manage bright sunlight and glare.

31.    On or about March 3, 2026, Plaintiff returned to Defendant's Website to review and compare the "Kai Polarized Sunglasses," "Avery Polarized Sunglasses," and "Breaker Sport Polarized Sunglasses," focusing on frame dimensions, lens color, and warranty details in order to select a pair he could wear during daily travel to medical appointments and errands.

32.    On or about May 12, 2026, Plaintiff again attempted to use the Website's shopping cart and checkout features to complete the purchase of at least one of these models.

33.    During his January 18, 2026, visit, Plaintiff accessed the Kai Polarized Sunglasses product page.  NVDA identified the main product image as an unlabeled "graphic" and additional images as file names or numbers, providing no description of frame style, color, or fit.  The "Add to Cart" control was read simply as "button," without indicating that it would place the Kai sunglasses into the shopping cart.  Unable to confirm what he was selecting or whether an item had been added, Plaintiff abandoned the transaction.

34.    During his March 3, 2026, visit, Plaintiff attempted to compare the Kai, Avery, and Breaker products.  Headings were missing or improperly ordered, causing NVDA to jump unpredictably and skip critical product specifications.  Key lens and frame information appeared visually but was not exposed to the screen reader in a logical order, and several "learn more" icons and links relating to warranty and sizing were announced only as "link" or "button," with no accessible context.  Plaintiff could not determine which model would best

protect his remaining vision or whether the frames were compatible with his prescription inserts, and again he was unable to confidently select a product.

35.   During his May 12, 2026, visit, Plaintiff proceeded to the Website's checkout flow.  Multiple input fields were announced only as "edit box," with no labels specifying whether they were for shipping address, contact information, or payment details.  When the form rejected his entries, error messages did not announce properly to NVDA and focus repeatedly cycled through navigation menus instead of remaining on the form.  Plaintiff could not identify or correct the problem fields and was unable to complete payment or finalize his purchase.

36.   The barriers Plaintiff encountered are consistent with automated accessibility evaluations conducted on Defendant's Website, including WAVE scans of the Kai Polarized Sunglasses page and the "Sunglasses – Polarized – Lifetime Warranty – Quality – Abaco Polarized" catalog page, which identify numerous errors such as missing alternative text, empty links and buttons, unlabeled form controls, and structural defects that conflict with WCAG 2.1. These findings corroborate that Defendant's Website is not coded in a way that allows screen-reading software to convey essential product and transactional information to blind users. Exhibit B

37.   Plaintiff is not seeking sunglasses for aesthetic purposes alone.  Because of his retinitis pigmentosa, bright sunlight and glare can cause severe eye strain, headaches, and functional disorientation.  Plaintiff specifically selected the Kai, Avery, and Breaker models because they combine polarized lenses, particular frame dimensions, and Defendant's lifetime warranty, features that make them uniquely suited to his condition and financial circumstances compared to generic sunglasses and small local retailers.  Plaintiff is therefore especially adamant about obtaining these particular items, since they allow him to maintain his schedule,

keep appointments, and move independently outdoors with reliable protection and manageable replacement risk.

38.    Defendant's inaccessible Website directly interferes with Plaintiff's ability to manage his day-to-day life.  When he cannot secure appropriate polarized sunglasses through an accessible online channel, he must either forego needed eye protection or rearrange his calendar to travel only under limited conditions, and he is forced to seek sighted assistance to navigate other vendors' websites or physical stores.  This loss of independence and disruption of his calendar is a concrete, particularized injury.

39.    Plaintiff genuinely intends to return to Defendant's Website once it is made accessible.  Within thirty (30) days after remediation, Plaintiff plans to revisit the Kai, Avery, and Breaker product pages to complete the purchase of at least one pair of polarized sunglasses, and he further intends to return during upcoming spring and summer seasons to purchase additional sunglasses as his needs evolve.  This intent is definite and credible: he has already attempted to buy specific products on three dates from his home in this District using NVDA, remains eager to obtain those same products because of their unique features and warranty, and his inability to do so is directly caused by the Website's inaccessibility.

40.    Plaintiff's experience satisfies Article III standing under the standards articulated in *Calcano v. Swarovski N. Am. Ltd.* and related Second Circuit precedent: he encountered specific barriers on specific pages on identified dates, while attempting to purchase identified products; he was prevented from completing planned transactions; he remains deterred from returning while the barriers persist; and his injury is fairly traceable to Defendant's conduct and redressable by an injunction.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the

United States who have attempted to access Defendant's Website and, as a result, have been denied access to the equal enjoyment of goods and services during the relevant statutory period.

42.     Plaintiff, on behalf of himself and all others similarly situated, also seeks to certify a New York City subclass: all legally blind individuals in the City and State of New York who have attempted to access Defendant's Website and, as a result, have been denied equal enjoyment of Defendant's goods and services during the relevant statutory period.

43.     Common questions of law and fact exist among the Class, including: whether Defendant's Website is a public accommodation under the ADA; whether it is a place or provider of public accommodation under the NYCHRL and NYSHRL; and whether the Website denies full and equal enjoyment of products, services, and privileges to people with visual disabilities.

44.     Plaintiff's claims are typical of the Class: Class members are blind or visually-impaired individuals whose access to Defendant's Website has been denied or impeded by the same accessibility barriers.

45.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass because he has retained counsel experienced in complex class action and accessibility litigation, and because he has no interests antagonistic to the Class.

46.     Class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole.

47.     Alternatively, class certification is appropriate under Rule 23(b)(3) because questions of law and fact common to Class members predominate over individual questions, and a class action is superior to other methods for fair and efficient adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of Title III of the Americans with Disabilities Act)**

48. Plaintiff repeats, releases and incorporates by reference the foregoing allegations as if set forth fully herein.

49. Title III of the ADA, 42 U.S.C. § 12182(a), provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

50. Defendant's Website is a service, privilege, and advantage offered by a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7). Through the Website, Defendant offers the general public information about its sunglasses, product specifications, warranty terms, promotions, and the ability to purchase items for shipment into this District.

51. Discrimination under the ADA includes, but is not limited to: the failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and the failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.  42 U.S.C. § 12182(b)(2)(A)(ii), (iii).

52. Defendant has failed to make reasonable modifications to its policies, practices, and procedures to ensure that its Website is accessible to blind and visually-impaired persons. Defendant has further failed to provide auxiliary aids and services—such as accessible

alternative text, accessible form controls, and logical heading structure—that would enable blind and visually-impaired persons to have equal access to Defendant's Website.

53. Defendant's conduct constitutes unlawful discrimination against Plaintiff and the Class in violation of Title III of the ADA, 42 U.S.C. § 12182.

54. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth in 42 U.S.C. § 2000a-3(a), Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

### (Violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.)

55. Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

56. N.Y.C. Admin. Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's actual or perceived . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges thereof."

57. Defendant's Website is a place or provider of public accommodation within the meaning of the NYCHRL. N.Y.C. Admin. Code § 8-102.

58. Defendant has refused, withheld from, and denied Plaintiff and the Class the accommodations, advantages, facilities, and privileges of Defendant's Website by failing to make the Website accessible to blind and visually-impaired individuals.

59. Defendant's conduct has been intentional in its deliberate indifference to the rights and sensibilities of Plaintiff and the Class.

60.     As a result of Defendant's unlawful discrimination, Plaintiff and the members of the Class have suffered and continue to suffer injury, including loss of equal access to Defendant's Website and the products and services offered thereon.

61.     Plaintiff and the Class are entitled to injunctive relief, compensatory damages, Defendant has further failed to make reasonable accommodations for Plaintiff's disability in the full use and enjoyment of the Website, as required by the NYCHRL

### THIRD CAUSE OF ACTION
**(Violation of the New York State Human Rights Law**
**N.Y. Exec. Law § 290 et seq.)**

62.     Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

63.     New York State Executive Law § 296(2)(a) provides that it is an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, resort, or amusement, because of disability, to refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges thereof.

64.     Defendant's Website is a place of public accommodation within the meaning of the NYSHRL.  N.Y. Exec. Law § 292(9).

65.     Defendant has refused, withheld from, and denied Plaintiff and the Class the accommodations, advantages, facilities, and privileges of its Website because of their disability, in violation of the NYSHRL.

66.     Defendant has also failed to make reasonable modifications or provide auxiliary aids and services to ensure that blind and visually-impaired individuals have equal access to its Website, in violation of the NYSHRL.

67.     Defendant's conduct has been willful, intentional, and undertaken with deliberate indifference to the rights of Plaintiff and the Class.

68.     As a direct and proximate result of Defendant's discrimination, Plaintiff and the Class have suffered damages and are entitled to injunctive relief, compensatory damages, civil penalties, and attorneys' fees pursuant to the NYSHRL.

**FOURTH CAUSE OF ACTION**
**(Violation of the New York State Civil Rights Law**
**N.Y. Civ. Rights Law § 40 et seq.)**

69.     Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

70.     New York State Civil Rights Law § 40 provides that all persons within the jurisdiction of the State of New York shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, subject only to the conditions and limitations established by law and applicable alike to all persons.

71.     Defendant's Website is a place of public accommodation within the meaning of the NYCRL.

72.     Defendant has denied and continues to deny to Plaintiff and the Class the full and equal accommodations, advantages, facilities, and privileges of its Website on account of disability.

73.     Defendant's conduct has been intentional and willful.  Pursuant to N.Y. Civ. Rights Law §§ 40 and 41, Plaintiff seeks a civil penalty against Defendant and on behalf of the Class, as well as injunctive relief and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class and Subclass, respectfully prays for judgment against Defendant as follows:

a.      A declaration that Defendant's Website is owned, controlled, and/or operated by Defendant, and is a service, privilege, advantage, or accommodation of a place of public

accommodation within the meaning of Title III of the ADA, the NYCHRL, NYSHRL, and NYCRL;

b.      A declaration that Defendant's acts and omissions described herein violate the ADA, NYCHRL, NYSHRL, and NYCRL;

c.      A permanent injunction requiring Defendant to make its Website fully accessible to and independently usable by blind and visually-impaired individuals, consistent with WCAG 2.1 AA, and to maintain such accessibility on an ongoing basis;

d.      An order requiring Defendant to implement policies, practices, and procedures that will ensure equal access for blind and visually-impaired individuals to the goods, services, facilities, privileges, advantages, and accommodations provided via its Website;

e.      An order requiring periodic accessibility audits and end-user testing with blind users, appointment of an accessibility coordinator, staff training, and publication of an accessibility statement and feedback mechanism;

f.      Compensatory damages, statutory damages, civil penalties, and punitive damages to the fullest extent permitted by the NYCHRL, NYSHRL, and NYCRL;

g.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205, the NYCHRL, NYSHRL, NYCRL, and other applicable law;

h.      Pre- and post-judgment interest as allowed by law; and

i.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
     June 12, 2026

Respectfully submitted,
JOSEPH NORINSBERG, LLC
Attorneys for Plaintiff and the Class
By: /s/ *Robert L. Schonfeld*
Robert L. Schonfeld
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com